IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

YOLANDA M. MATHIS,
on behalf of
Xiomaria Lanona Mathis, a minor child                    PLAINTIFF

V.                    NO. 4:20CV00241 DPM/PSH

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                           DEFENDANT

### RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to Chief United States District Judge D.P. Marshall Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, Yolanda M. Mathis, applied for disability benefits on behalf of her minor child Xiomaria Lanona Mathis ("XLM") on April 4, 2016, alleging disability beginning on April 4, 2014. (Tr. at 13). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge

("ALJ") denied Ms. Mathis's claim. (Tr. at 27). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Mathis has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.   The Commissioner's Decision:

For minor child disability cases, an ALJ must follow a three-step sequential evaluation. Under this framework, the ALJ is required to first determine if the minor is engaging in substantial gainful activity. 20 C.F.R. § 416.924. Next, the ALJ must decide if the impairment, or combination of impairments, is severe. *Id*. Finally, the ALJ must determine if the Plaintiff has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id*. For medical equivalence, the ALJ refers to the Child Listing of Impairments in Disability Evaluation. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. This is an index of medical conditions and the signs or symptoms required for a minor to meet a Listing.

For functional equivalence, a minor has met a Listing if her impairment or combination of impairments results in a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.

*Id*.

The ALJ in this case found that XLM was not engaged in substantial gainful activity. (Tr. at 16). He next determined that she had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder, mood disorder, anxiety disorder, and eczema. *Id*.

The ALJ next concluded that XLM did not medically meet Listings 112.04, 112.06, 112.08, 112.11, and 108.00. 20 C.F.R. §§ 416.923-926 (Part 404, Subpart P, Appx. 1); (Tr. at 16-19). Finally, he determined that XLM did not have an impairment that functionally equaled the severity of the Listings; that is, he concluded that XLM did not have severe impairments that resulted in two marked limitations or one extreme limitation in the six functional domains. (Tr. at 18-27). Therefore, the ALJ determined that XLM was not disabled. *Id*.

### III. <u>Discussion</u>:

    A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

  B. Ms. Mathis's Arguments on Appeal

Ms. Mathis contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that (1) XLM met Listing 112.08; (2) the ALJ erred in finding no marked impairment in any domain; (3) the ALJ did not properly assess treating provider opinions; and (4) the ALJ did not make a proper "credibility" determination. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Mathis alleges that XLM has been irritable, defiant, and destructive during the relevant time-period.[1] Indeed, she took part in psychiatric services in 2015 and 2016 for treatment of her diagnosed mental impairments. (Tr. at 263-698). Clinic notes from 2015 show that XLM was hyperactive and had destroyed property. (Tr. at 274). Psychiatrist Veronica Raney, M.D., noted that XLM did well academically but had behavioral problems that impaired functioning in home, academic, and social settings. (Tr. at 310-316). She said treatment was required. *Id*.

Clinic notes from a number of visits spanning 2016 revealed that XLM: (1) positively participated in group activities; (2) put forth good effort to cooperate with her siblings; (3) was engaging in games to better cope; (4) appropriately expressed her thoughts; (5) was a good friend to others; (6) felt good about a recent

---

[1] XLM was in fifth grade at the time of the 2018 hearing, and the relevant time-period began on April 4, 2016, the date the application was filed. (Tr. at 27, 58-65).

standardized test; and (7) identified effective conflict resolution. (Tr. at 681-697, 888-934).

At the hearing, Ms. Mathis said that only as recently as May 2018 was XLM prescribed medication, and that it helped with symptoms. (Tr. at 58-63). She said that XLM loved schoolwork and was on the Honor Roll. *Id*. Ms. Mathis said therapy and summer camp helped. *Id*. Mental status examinations at XLM's pediatric clinic were consistently normal. (Tr. at 716, 719, 722, 726, 730, 1068, 1074-1088).

Two teachers filled out source statements correlating to XLM's performance in the functional domains. XLM's third grade teacher, Kirin Floyd, found no problems in any of the six domains. (Tr. at 699-706). Stacey Hall, KLM's fourth grade teacher, found serious problems in expressing anger appropriately and identifying and assessing emotional needs, and she noted an obvious problem in attending and completing tasks. (Tr. at 1040-1044 Check). Ms. Hall said that KLM had mild-to-moderate problems in the other domains. The ALJ discussed these two opinions, giving them some consideration. (Tr. at 21). He also expressly said he considered Ms. Mathis's testimony. *Id*.

Ms. Mathis contends that the ALJ erred by not mentioning statements of MHPP Tracy Parker, MHPP Jamila Hall, providers with XLM's counseling facility. However, Ms. Mathis labels these statements as opinions, when really, they were

just clinic notes that vaguely stated XLM would have significant impairments in functioning due to her illnesses, and that XLM needed reminders and struggled to follow directions. (Tr. at 310-316, 857, 932). The providers did not fill out any form related to the six functional domains, and they did not impose any functional restrictions. The providers said that XLM would benefit from treatment: that proved to be exactly the case. The ALJ did not err in failing to mention these brief clinic notes. The record showed success at school, ability to get along with peers and siblings, and improvement with treatment.

For those reasons, the ALJ was correct in finding no more than "less than marked" limitations in the six functional domains. He noted some problems with behavior and social skills, but also cited XLM's average intelligence, the positive effect of medication, and the source statements from the teachers. The ALJ discussed the opinions of disability determination services medical experts, and found them to be consistent with the record. The agency medical experts found a less than marked limitation in interacting and relating with others, and no limitation in the other five functional domains. (Tr. at 72-73, 83-84). The RFC incorporated these opinions, along with the other evidence of record. Finally, the ALJ considered the testimony from Ms. Mathis and gave it some weight, as it was consistent with evidence of academic success and improvement with treatment. The ALJ's decision reflected an

accurate analysis of the medical evidence of record, and his assessment of limitations in the six functional domains was proper.

For the reasons stated above, Ms. Mathis's argument that XLM met Listing 112.08 (Personality and Impulse-Control Disorders) also fails. In order to meet Listing 112.08, Ms. Mathis must show that XLM satisfied both A and B, below:

    A. Medical documentation of a pervasive pattern of one or more of the following:
        1. Distrust and suspiciousness of others;
        2. Detachment from social relationships;
        3. Disregard for and violation of the rights of others;
        4. Instability of interpersonal relationships;
        5. Excessive emotionality and attention seeking;
        6. Feelings of inadequacy;
        7. Excessive need to be taken care of;
        8. Preoccupation with perfectionism and orderliness; or
        9. Recurrent, impulsive, aggressive behavioral outbursts.
    AND
    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):
        1. Understand, remember, or apply information (see 112.00E1).
        2. Interact with others (see 112.00E2).
        3. Concentrate, persist, or maintain pace (see 112.00E3).
        4. Adapt or manage oneself (see 112.00E4).

The burden rests squarely on the claimant to show she meets a Listing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Again, because of XLM's progress with medication and counseling, and her generally normal mental status examinations, and her average intellectual functioning, the Court agrees that she did not meet

8

Listing 112.08.

Finally, Ms. Mathis contends that the ALJ did not do a proper "credibility analysis." Social Security Ruling 16-3p removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. 2016 SSR LEXIS 4 ("SSR 16-3p"); 20 C.F.R. §§ 404.1527, 404.927. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors (previously described by ALJs as the *Polaski* factors) that were in place prior to the new Ruling. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017); *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). Contrary to Ms. Mathis's argument, an ALJ does not err if he does not mention the *Polaski* case. An SSR 16-3p discussion suffices.

When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). The ALJ expressly cited to SSR 16-3p and discussed things like Ms. Mathis's testimony, teachers' opinions, and

9

medication for mental impairments. He properly found that the subjective allegations of disabling conditions were inconsistent with the medical record as a whole.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that XLM was not disabled. The ALJ did not err in his evaluation of the six functional domains, he properly analyzed the relevant Listed Impairments, and he fairly considered XLM's subjective complaints. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 9th day of March, 2021.

_____
UNITED STATES MAGISTRATE JUDGE